Good morning. May it please the court. My name is Joe Norenya. My partner, Tyler Queznell, and I are Boston College law students. We are appearing under the supervision of Kari Hong. We represent Petitioner Luis Yepez-Vargas, whom we will refer to as Mr. Yepez. With leave of the court, my partner will provide two minutes of rebuttal. There are two paths to decide this case. One is to agree with prior decisions that have held that ARS 13-3408 is overbroad and indivisible as an aggravated felony and as a controlled substance offense. If the court agrees with those decisions, at a minimum, remand is warranted to permit Mr. Yepez to apply for cancellation. He is an LPR. He has lived in the country for 35 years, and this is his only Your Honor, Madrid Farfan and Vera Valdivinos from this court held that 3408 is indivisible. The second path is also to address the CIMT and reason to believe grounds. If the court agrees with our arguments, it may terminate. If it does not, it still can remand for cancellation. On the second path, ARS 13-3408 is not a CIMT because the federal government removes benzophenyl and phenylphenol from the federal CSA because DEA studies, quote, indicated that the compounds were both essentially inactive with no evidence of abuse potential, end quote. Well, if I might, let's look at 3408. We're looking at 3408A7, right? Correct, Your Honor. And it would seem pretty simple that if we were looking at 3408A7, and we're only looking at a person shall not knowingly transport for sale, import into this state, offer to transport in this state, sell, transfer, offer to sell or transport, that's a divisible statute. Your Honor, the prior decisions of this court held that ARS 13-3408 is indivisible. Just a minute. I don't know that I'm quite agreeing with you on that, but let's go to 3408A7 because I don't want to talk about 3408. I disagree with you on what you just said, but let's go to 3408A7. If I look at A7, it seems to me pretty simple that if I'm only looking at knowingly transport for sale or import into this state or offer to transport into this state or sell, transfer, offer to sell, that would make it divisible. But in this particular case, we're not really arguing about those, are we? We're talking about a narcotic drug. Correct, Your Honor. So we're really talking about whether a narcotic is divisible, right? Correct, Your Honor. And what statute or case or whatever would suggest that a narcotic drug would not be divisible, especially when, if I look at 13-3408A7 and I would be divisible, 3407 is divisible, there's no question, but we're looking at 13-3408A7. So I guess I'm trying to figure out why that would not be also divisible. Correct, Your Honor. And Matt, this establishes that only one element of the statute must be indivisible for the statute to be indivisible. And Madrid Farfan surveyed Arizona cases and noted that quote, Arizona courts have specific drug type, end quote. But just a minute, there are also cases which would suggest that, like for instance, State v. Padilla. State v. Padilla had a defendant, he was pled guilty to possession of the two different drugs, and he was for two different counts. How do I rectify that case? Your Honor, in Madrid Farfan, the government cited cases where that was the case, where they were multiple convictions for multiple narcotic drugs. However, Madrid Farfan specifically rejected those arguments because of a case like State v. Castorina, an Arizona court of appeals case, where the Arizona court of appeals held, quote, it is sufficient for the State to show the defendant knew he possessed a narcotic or dangerous drug. Neither our statutes nor case law require the State to prove the defendant knew which particular drug defined under our laws as a dangerous or narcotic drug he knew he possessed, end quote. And for Madrid Farfan, that was the reasoning that, excuse me, the fact that juries did not have to agree on the particular narcotic drug in order to sustain a conviction was enough for the court to agree that the statute was indivisible. Well, I guess my worry has been and always has been that when I read the government's briefs and I read all of those cases in which there was, it seemed to me that at least as to 3407, the drug was important in determining whether there was a conviction or not, why would it be any different in 3408? Your Honor, the case law is different for 3407 and why would it be any different, especially when I could look at all these cases where under 3408, one has been convicted of two different counts for two different drugs? Perhaps. I don't want to speculate into the Court's reasoning in those respective cases, but perhaps the reasoning is that 3408 has no separate punishments for the type of narcotic. And by contrast, 3407 criminalizes identical conduct as 3408 for those with control over dangerous drugs, but 3407 assigns heightened punishment based on the identity of the drug. For instance, all acts involving methamphetamine under 3407 are criminalized as a class 4 felony, whereas other drugs are punished as misdemeanors. 3408 has the same punishment scheme for all different types of narcotic drugs. And v. Vicencio finds this significant both in finding a disparate punishment scheme divisible and an equal punishment scheme indivisible. On the second path, with regard to — excuse me. So on the second path, ARS, the Court can determine the CIMT and reason-to-believe grounds. And if it agrees with the arguments, it may terminate. And if it does not, it still can remand for cancellation. But on that second path, 3408 is not a CIMT because the Federal Government removed benzophenyl and phenylphenol from the Federal CSA because the DEA studies indicated that there was no evidence of abuse potential. The BIA here, thus, was wrong when finding that the deregulation and the lack of abuse was, quote, irrelevant, end quote, to the CIMT analysis. Under matter of Quorn, which the BIA relied on, trafficking drugs regulated under the Federal CSA are CIMTs because of Congress's long history of drug crimes and the evils of drug trafficking, which was deemed, quote, murder on the installment plan, end quote, Selling inactive, non-abusive drugs, which Arizona happens to regulate, cannot fall in that category. If the Federal CSA is not the bright line, which drugs are or are not included? And 3408's inclusion of the very two substances that the Federal Government no longer deems dangerous or abusive cannot be a CIMT. And the categorical approach and lease of the act's presumption apply to the CIMT analysis. The most narrow ground to resolve this case, then, is that a conviction under an overbroad, indivisible statute that regulates non-abusive drugs, which Congress deregulated, cannot be a CIMT. On the reason to believe ground, the IJ noted that the government has the burden to prove this inadmissibility ground. And as Avila V. Holder noted, an inconclusive record is insufficient to uphold a reason to believe finding. For five reasons, this record is also inconclusive. First, so really what your argument is as to reasonable belief is, because there is a record which is inconclusive as to the reasonable belief, you win. Correct, Your Honor. And this case is unique because we are not arguing that conviction records can never support a reason to believe finding. Well, I understand that. But what you're saying is that based on this record itself and the many things that are in this record, one cannot make that supposition or one can't reach that conclusion. Correct, Your Honor. That is our argument. And first, the government argues that inadmissibility can be proven based on one passing mention of cocaine in a partial hearing transcript. But cocaine is not mentioned on Mr. Yepes's amended plea agreement or the judgment. In Mathis, Justice Kagan noted that, quote, at trial and still more at plea hearings, a defendant may have no incentive to contest what does not matter under the law, end quote. But if I look at his plea agreement and I looked at it, it says, amended count 1, attempt to transport a narcotic drug for sale, says the class 3 felony, and then it says 131001, which is the attempt. But all the other provisions of that amended count are the same as the information that he was charged with in the first place. Correct, Your Honor. The original information, the statutes are the same. However, the original information charges a substantive transportation crime and specifically mentions cocaine. However, the amended complaint instead only charges the amended complaint, which is incorporated at the plea agreement, only charges an attempted crime and only mentions narcotic drugs. As Justice Kagan noted in Mathis, a defendant may have no incentive to contest what does not matter under the law at his plea hearing. And Mr. Yepes was going to face the same punishment whether his attempted plea agreement or attempted crime involves cocaine, benzophenone, or even baking powder that he thought was cocaine. There was no reason for him to contest one officer's testimony, not a court finding, but testimony in a collateral hearing at his plea hearing. As Mathis says, quote, to the contrary, he may have good reason not to or even be precluded from doing so by the court, end quote. Second, the key fact is that the only mention of cocaine comes in something that is the officer's testimony again relates. But the partial transcript, can we rely even on that partial transcript in making this determination? The court may rely on the partial transcript, but perhaps helpful in the Eleventh Circuit, Garces reversed the reason to believe finding when the only evidence there was a police report because the Foreign Affairs Manual instructs fact finders not to base inadmissibility, quote, solely on the conclusions of other evaluators no matter how trustworthy. The transcript is of the plea, of the plea hearing? Your Honor, the transcript was incorporated as the factual basis at Mr. Yepez's plea colloquy in his criminal case. And the partial transcript was of your client's responses? So if I may, at the plea colloquy, the trial judge in Mr. Yepez's criminal case said, quote, and this is at AR 238, the court can take judicial notice of the facts as adduced at the motion to suppress hearing and as reflected in the transcript which was filed with the court on November 18th, 2010, end quote. All we have in the record that was prepared by the DHS is part of that transcript. And also at the plea colloquy, Mr. Yepez. But you really didn't answer Judge Baez's question, which I think is quite important. That's a transcript of what? Oh. What was attached? It's the transcript of what? In the record, it is just labeled as a partial transcript. We may be able to infer that it is a partial transcript of a motion to suppress hearing, but we are not 100 percent sure. Well, that's why I thought Judge Baez was asking. But it was introduced as a part of the plea, right? It was introduced as the factual basis at the plea colloquy. Right. But what is significant is that at the plea colloquy, Mr. Yepez only admitted to a crime involving narcotic drugs. The trial judge asked him, quote, attempted count one, attempt to transport a narcotic drug for sale. Mr. Yepez Vargas, how do you plead? And Mr. Yepez responded, guilty. This is in complete contrast from Martinez-Lopez, for example, where the trial judge asked Martinez-Lopez, on or about December 31st, 1997, did you sell cocaine base, .42 grams of cocaine base? He responded, yes. And as a third reason for the reason to believe ground, this record is as sufficient as the one in Avila v. Holder, in which this Court reversed a reason to believe finding. There, the charging document mentioned heroin, but Ms. Avila's plea agreement and her judgment mentioned only controlled substances. Avila found this evidence inadequate because when the fact finder is left to speculate what specific drug was involved in a crime, even under the lower reason to believe standard, quote, speculation is not enough, end quote. You're using the time of your associate. Yes, Your Honor. We'll give you two minutes. All right. Thank you, Your Honor. If I may very briefly finish. I'm trying to bring you to a conclusion so that your associate may use the podium. Thank you, Your Honor. If there are no further questions, there is my remaining time. All right. Thank you. Don't you have two minutes? That was rebuttal. Oh, I thought you did. What did you do, rebuttal? Oh, rebuttal, I see. I thought that you were splitting your time with one of your other students. That's only on rebuttal. He was just giving him rebuttal. Okay, fine. All right, go ahead. Good morning, Your Honors. Anna Juarez for the Respondent Attorney General of the United States. The court should deny this petition for review because, one, there's no record evidence that compels the reversal of the finding that the Attorney General had reason to believe the petitioner was involved in drug trafficking and, therefore, is inadmissible. Two, it was petitioner's burden to show that he was. Let's stick with that for a second. What's your evidence that the drug trafficking that the Attorney General has reason to believe the drug trafficking included cocaine? The record, which includes the sworn testimony of a police officer, and he testifies in court that it was cocaine. The original information, the factual basis, shows that it's cocaine. The original information? The information with the original charge. We're talking about the document 623? The state of Arizona, the information, that's the one we're talking about? That's correct. Okay. At 290. But he didn't even plead to that, did he? He pled to a different charge. Why is that a basis? My point is that there's no indication that it's any drug other than cocaine. Everything in the record. That seems a little out of it because I tried to have him talk to me about that. I tried to trace this through to see whether we could have any idea that it was cocaine because the only place we got cocaine is in the original information, and I got no way to trace from the original information to the attempted plea agreement to anything else. Your Honor, two points. First, in the plea agreement. In the plea agreement? We're talking about the document I have in front of me dated May 24, 2011? Correct. The change of plea transcript. Change of plea transcript? Change of plea transcript, that isn't this plea agreement? This is just a transcript we've already talked about here where he didn't even talk about it? The state court judge stated included the transcript as a factual basis. He included the transcript of a hearing? We don't even know what it was. He noted the date, the November 18, 2010 date. There's no indication that that's not the hearing, the motion to suppress hearing. We don't know that. I tried to find it. I tried to find out where it was. That's why I gave him the business about it. What is it? It appears to be a motion to suppress hearing. It's the same date that the judge referred to. So I'm supposed to guess that it is? There's no indication to believe that it's not that. Come on. I guess if that's the best you got, that's the best you got. It's the original information. It's the sworn and for reason to believe. The original information is of no relevance here because it's not pled to. There's nothing about it. I can't find anything about it. The best I've got is the plea agreement and this transcript, and I don't even know what it's a transcript of, which was attached to the judge saying are you guilty or not, and he says guilty. I don't even know what he's guilty of. I looked all the way through there to find that. I think my questions were always going to be, if you win on the issues we have in front of us, you still have to go back and make this determination again. I can't determine it here on appeal. There's no way. For the reason to believe charge to determine inadmissibility, the standard is reasonable, substantial, and probative evidence. A lot of those cases, they don't even discuss the actual evidence, the actual court documents. El Coran Serrano discusses. There's no analysis of what the documents are. We know that agents found marijuana at the border. Lopez Molina, they relied on a police report describing surveillance. Chavez Reyes, there was a plea agreement. So we're going to rely on a police officer's testimony? Sworn testimony. Because that's the only thing I've got. The sworn testimony in the court. There's also a radiologue, which is not a Shepard document, but these are all substantial. There are no Shepard documents we've talked about yet. They are. Except the plea agreement, which doesn't tell me anything. Under Arizona law, there must be a factual basis for a plea of guilty. The Arizona criminal rules state that. It's well established in court law. There has to be a factual basis. And this judge in the plea transcript said, and a factual basis, asked, and then he said, I take judicial notice of the facts as adduced at the motion to suppress hearing. And then November 18, 2010, which is the date of the transcript of sworn officer testimony, he asked, is there any further factual basis? And the petitioner's attorney said, no, judge. And so under Arizona law, that's enough to connect sworn testimony with this guilty plea. Tell me why I should even get there. What is there that would suggest that I can get there under a CIMT or an aggravated felony in this particular situation when I'm trying to determine whether a narcotic drug is divisible? Two responses to that. First, I think it's easy to get there under the reason to believe, which would make him inadmissible. It just needs to be substantive probative evidence, and I would argue it is. So he's inadmissible. For the aggravated felony ground, which determines whether he's eligible for belief, we get there if the Arizona ---- If narcotic drug is divisible? If narcotic drug is divisible. And what says it's divisible? Under the face of the statute as well as Arizona case law. Well, the face of the statute doesn't say that it's divisible. It doesn't say. It just says narcotic drug. And as Your Honor had pointed out earlier, the narcotic drug is then defined in ARS 13-3401, which has an exhaustive ---- 3401-20?  Correct, Your Honor. But that would make it broader. Well, it's an exhaustive list of the different types of drugs that ---- Well, I thought that you did not even dispute the statute's overbroad. It's not. It is. It's overbroad. The government agrees that it's overbroad. Therefore, not a categorical match. Correct. But it is divisible. Okay. That's where we are. That's where I thought we were until you started. So why is it divisible? It's ---- What case says it's divisible? Applying Martinez-Lopez, the analysis in that case, can be applied exactly to this case. Just a minute. Let's look and don't look at Martinez. That's my case. What Arizona case are you going to look at? Our brief. Because I looked at your brief, and frankly, I don't find anything in your brief which would say that it is divisible. I mean, there are cases in there that would cite things, but they really don't go under this particular statute. I ---- It's 3408A7. And it's whether, and as you noted, it is, as Your Honor noted, it's, we're discussing whether a narcotic is divisible. Whether it's ---- Right. That's what we're discussing. Do you have any case where the court has held that a jury has to decide on which drug was involved unanimously? That would help us to decide whether the statute is divisible. Because just a narcotic drug, one juror can, six jurors can decide it was cocaine, six jurors can think it's methamphetamine, and they can convict even though they don't agree on the drug. Can't they? I haven't found any cases that said that, that they can disagree on a drug and still convict. Well, but the jury instruction certainly allows it. They, they're not entirely clear. If I read the jury instruction, it says they don't have to agree on the drug. It's, they don't say that. The jury instruction corresponds with that. I mean, if you read it and see what you have to put in or you don't, they don't have to agree on the drug. The use note for the jury instructions define narcotic drug as defined in ARS 13-3401, which would ---- Which is wider than the federal counterpart. Excuse me? 13-3401-20 is broader than the federal counterpart. Right, but to identify that a drug is a narcotic, they would have to identify what the drug is. Otherwise, how would you determine that it was a narcotic drug? You're arguing that the Arizona jury instruction supports your idea that narcotic drug is divisible? I think it can be argued that way. Courts have found both ways. I don't know any Arizona case that says that. And Judge Bea goes then to the other side, which is finally a court case which says you've got to agree on the drug. All I tried to do was go at it a different way to give you a different approach. I think you'll agree that both cocaine and methamphetamine are narcotics? They are, but I don't think that the jury can find ---- I think the jury needs to identify the drug as an element. And I bring you back to Martinez-Lopez because I think the same issue was there where the California ---- it didn't rely on a California case that said ---- Martinez-Lopez is a California case. If we've decided the California statute is divisible and you have to find a specific narcotic in order to be violative of it. Correct. This is an Arizona case. Yes, but the analysis that they used, they looked at Arizona state law. Excuse me. California. California law. That's why I tried to get you away from that. I said that's our case. It's on a different state. Well, but the analysis that they used, they found that because defendants in California were routinely subjected to multiple convictions for multiple types of drugs used in one act, therefore they had a definitive answer that the controlled substance was an element. And you can apply that same analysis here in Arizona. I don't think you really can. Did you look at State v. Salinas? Opposition counsel quoted it a minute ago. In State v. Salinas it says, this is the Arizona Supreme Court, the elements of possession of a narcotic for sale are, one, exercise dominion and control over the substance, two, knowledge the substance is present, three, knowledge the substance is a narcotic, and four, possession of the substance for the purpose of the sale. It doesn't say the jury needs to know, or that the jury would need to determine the defendant knew the substance he possesses was a narcotic or that he needed to even know what the specific drug was. And regarding the... I mean, how do you explain that? I know two of the others. I need to go back and look at that case. The other cases that petitioners have cited to you, they deal with a scienter, and it might apply to this case too, whether the defendant needs to know what the drug is. And that's different from needing to know what the element of the drug is in this case. What do you do with State v. Castorina? Another Arizona case where it says, it is sufficient for the State to show that the defendant knew he possessed a narcotic or dangerous drug. Neither our statutes nor our case law require that the State prove the defendant knew which particular drug defined under our laws is a narcotic drug he knew he possessed. Again, Your Honor, that deals with the scienter of the case, whether the defendant knew what it was, not whether a jury needed to establish the element. It's an unpublished Arizona court of appeals case. And applying the Martinez-Lopez multiple convictions, being routinely subjected to multiple convictions is a definitive answer based on published Arizona case law is stronger than these unpublished court of appeals cases that don't quite hit it on the head either. They don't say that it's not an element. They are dealing with other issues. And so while they can be extracted to kind of argue that it's not an element, I don't believe that it establishes that it's not an element of the case. What about attempt? Have you looked at attempt? It seems to me that attempt in Arizona is also broad. It gives three ways to have an attempt. It is. Why would that not make it so that it is not a categorical match? Your Honor, this court, First and Taylor, stated that it's... But Taylor only deals with one of the elements, and that's two. On the other hand, Sandoval v. Sessions deals with the third element, and it says a mere solicitation of controlled substances does not constitute attempted delivery under the Controlled Substances Act. I see that my time is up.  Go ahead, Minister. Your Honor, this court has in several published decisions since Taylor keeps stating that it's a substantial attempt. But Taylor only deals with the prong two of the Arizona statute. It doesn't deal with prong one, which I think you could have a good defense on. But prong three, if I look at Sandoval, there's no way for you to get around that. Petitioners did not brief or raise it any time prong three. I understand that. And so the government rests on the Ninth Circuit precedent that keeps upholding that attempt is the same as the federal definition, the generic definition. Thank you. Thank you, Your Honors. If you want to use two minutes for rebuttal, you may. Thank you, Your Honor. I don't think that would be necessary. Your name again? Tyler Kwasno. I have one point. For returning lawful permanent residents such as Mr. Yepez, the government bears the burden to prove that he can be charged as inadmissible. An inconclusive record is insufficient to sustain that burden. This record is inconclusive and cannot sustain the charges. If there are no further questions, with leave of the court, may I submit the case? Okay. Thank you very much. We thank the students who have come all the way from Massachusetts to argue in the Ninth Circuit. You're very well prepared, and your argument was well presented. Thank you to the government also for their argument, and the case will be submitted. We will stand in recess until tomorrow at 9 o'clock. All rise.
judges: Fernandez, Bea, N.R. Smith